Michael VerBOUWENS, Plaintiff
and Appellant,

v.

HAMM WOOD PRODUCTS,
Defendant and Appellee,

and

The Maryland Casualty Company,
Baltimore, Maryland, Defendant.

No. 13941.

Supreme Court of South Dakota.

Considered on Briefs April 20, 1983.

Decided June 15, 1983.

Wayne F. Gilbert of Lehnert & Gilbert, Rapid City, for plaintiff and appellant.

Franklin J. Wallahan, Rapid City, for defendant and appellee Hamm Wood Products.

HENDERSON, Justice.

## ACTION

On May 14, 1982, appellant VerBouwens filed a complaint against appellee Hamm Wood Products and The Maryland Casualty Company for injuries sustained in an industrial mishap. Discovery was conducted and summary judgment dismissing appellant's claim was entered on July 26, 1982. Appellant filed a notice of appeal to this Court on September 27, 1982. Maryland Casualty Company filed a motion to affirm, and on January 13, 1983, the motion was granted dismissing Maryland Casualty Company from this action. We affirm.

## FACTS

On February 17, 1981, appellee Hamm Wood Products hired appellant VerBouwens as a saw operator in appellee's sawmill. Thereafter, on February 19, 1981, appellant VerBouwens sustained personal injuries while operating appellee's saw. Appellant VerBouwens filed a claim under our Worker's Compensation Act and received, as of the date of the complaint herein, $37,430.40 in hospitalization and disability payments.

Appellant VerBouwens brought this action against appellee Hamm Wood Products because the saw in question, as designed and constructed by appellee for use in its sawmill, failed to have proper safety equipment. Appellant VerBouwens' complaint avers: (1) appellee committed an intentional act as it *knew* the saw was inherently dangerous; and (2) appellee was liable to appellant in its role as manufacturer of the saw.

## ISSUES

### I.

THE CIRCUIT COURT GRANTED SUMMARY JUDGMENT IN FAVOR OF THE EMPLOYER AND AGAINST APPELLANT ON THIS INTENTIONAL TORT CLAIM. WE UPHOLD THE TRIAL COURT.

### II.

IS AN EMPLOYER, WHO ALSO DESIGNS AND MANUFACTURES A PIECE OF EQUIPMENT FOR USE IN ITS BUSINESS, LIABLE TO AN EMPLOYEE ABOVE AND BEYOND ITS STATUS AS AN EMPLOYER? REFUSING TO RECOGNIZE THE DUAL CAPACITY DOCTRINE, WE HOLD THAT IT IS NOT.

## DECISION

### I.

In our decision herein, we must heed this state's Worker's Compensation Law. Our worker's compensation statutes feature an exclusivity of remedy provision in SDCL 62–3–2:

The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, officer or director of such employer, *except rights and remedies arising from intentional tort.* (Emphasis supplied.)

Therefore, appellant VerBouwens brought an action on a theory of intentional tort. Appellant VerBouwens omits any reference as to which intentional tort appellee Hamm Wood Products committed, opting instead to simply plead that appellees' knowledge of the saw's dangerous condition was willful, wanton, and reckless conduct which amounted to an intentional act. Appellee asserts our tort standard of intent is the same standard as used in construing will provisions.

Willful and wanton misconduct is something more than ordinary negligence but less than deliberate or intentional conduct. *Granflaten v. Rohde,* 66 S.D. 335, 283 N.W. 153 (1938). Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a *probable,* as distinguished from a *possible* (ordinary negligence), result of such conduct. *Granflaten,* 283 N.W. 153. Contradistinguished, intentional tortious conduct is when an ordinary, reasonable, prudent person would believe an injury was *substantially certain* to result from his conduct. *Spivey v. Battaglia,* 258 So.2d 815 (Fla.1972). To establish intentional conduct, *more than the knowledge and appreciation of risk is necessary;* the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence), and become a *substantial certainty. Spivey,* 258 So.2d 815.

As set forth in *Ruple v. Weinaug,* 328 N.W.2d 857 (S.D.1983), our standard of review for summary judgments is drawn from SDCL 15–6–56 and *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968). We have examined the record herein to ascertain if a genuine issue of material fact has been raised, and our conclusion is in the negative. We can hypothesize that appellee may have known of a probable risk of injury from its saw design. But on the record before us, we are unable to say appellee was *substantially certain* that appellant's injury would result. Appellant VerBouwens fails to plead an adequate theory or the elements of an intentional tort. We hold summary judgment was properly awarded below on this issue.

## II.

The gravamen of appellant VerBouwens' second issue is that appellee Hamm Wood Products, as the designer and manufacturer of a dangerous saw, falls within an exception to the exclusivity rule set forth in SDCL 62–4–38:

> Whenever an injury for which compensation is payable under this title shall have been sustained under circumstances creating in *some other person than the employer* a legal liability to pay damages in respect thereto, the injured employee may at his option either claim compensation or proceed at law against such other person to recover damages or proceed against both the employer and such other person, but he shall not collect from both. (Emphasis supplied.)

In order to reach appellant VerBouwens' desired result, we would have to hold that employers can be held liable to employees separate and apart from their employer status.

In *Wilson v. Hasvold,* 86 S.D. 286, 194 N.W.2d 251 (1972), we addressed the issue of who constitutes someone other than an employer for purposes of SDCL 62–4–38. Our primary holding in *Hasvold,* 194 N.W.2d 251, allowed a corporate officer who was not an employer to be held liable under limited circumstances as a fellow-employee. Most importantly, we also held in *Hasvold* that an employer could *not* be a person subject to liability under SDCL 62–4–38. We cited with approval in *Hasvold,* 86 S.D. at 291, 194 N.W.2d at 254, the following language from *Neal v. Oliver,* 246 Ark. 377, 388–89, 438 S.W.2d 313, 319 (1969):

> "[I]f the corporation was the employer and Oliver was the mere president, he was not personally liable in tort or under the compensation act for injuries sustained by corporate employees who are injured on defective corporate owned and maintained machines and equipment. If Oliver was the actual employer, his corporate title made no difference. His business was within the provisions of the Workmen's Compensation Law, the appellant's injury was compensable under the compensation law, and her rights thereunder are exclusive."

Therefore, appellant VerBouwens' "dual capacity" theory is defective and not the law of this jurisdiction. Here, appellant VerBouwens' recovery is exclusively governed by our Worker's Compensation Law.

Affirmed.

FOSHEIM, C.J., and DUNN and MORGAN, JJ., concur.

WOLLMAN, J., concurs specially.

WOLLMAN, Justice (concurring specially).

I join in the majority opinion's holding. I concur specially only to ally myself with the recent well-researched, well-reasoned opinion in *Shearer v. Homestake Mining Co.*, 557 F.Supp. 549 (D.S.D.1983), wherein Chief Judge Bogue correctly predicted that if presented with the issue this court would reject the expansive reading given to the intentional acts exception by the Supreme Court of Appeals of West Virginia in *Mandolidis v. Elkins Industries, Inc.*, 246 S.E.2d 907 (W.Va.1978). The majority opinion does indeed reject the *Mandolidis* approach, although without specifically citing that decision, and I join in that holding.

Chief Judge Bogue points out the consequences that would follow from the adoption of the *Mandolidis* approach:

> If the "intentional tort" exception was expanded as plaintiffs request, the focus would be upon the degree of risk of injury and the state of knowledge of the employer and the employee regarding the dangerous conduct or condition which caused the injury. This result undermines the balance of interests maintained by the worker's compensation system. First, it would thwart the goal of the system to provide employers relative immunity from liability at law. Second, it would deny many employees the swift and certain compensation they now receive under the system. The system originally required employees to surrender their right to a potentially larger recovery in a common law action for the wilful or reckless misconduct of employers, in return for expeditious recovery under worker's compensation. Employees disappointed with worker's compensation recovery would be encouraged to seek additional compensation in a common law action, increasing the role of the courts in resolving industrial accident disputes.

*Shearer v. Homestake Mining Co., supra,* at 555.

It can be argued, of course, that the intentional acts exception as set forth in our worker's compensation statutes should be expanded to encompass willful and wanton misconduct. *See* Note, "Workers' Compensation: Expanding the Intentional Tort Exception to Include Willful, Wanton, and Reckless Employer Misconduct," 58 Notre Dame Law Review 891 (1983). Such an expansion, however, should be made only after the empirical economic data implicated in that decision have been examined. Just as worker's compensation insurance coverage is not an inconsiderable cost of doing business, so also would be the additional cost of insuring (if indeed such coverage is available) against the liability arising from the narrowing of the scope of the exclusive remedy provided by our worker's compensation statutes. In a word, these are costs that should be determined and weighed by the legislature. It should be noted that the intentional tort exception was not added to SDCL 62–3–2 until 1977. *See* 1977 S.D.Sess.Laws, ch. 422. Thus we are not faced in the instant case with a history of legislative inaction as we were in *Walz v. City of Hudson*, 327 N.W.2d 120, 123 (S.D.1982) (Wollman, J., concurring specially). If the legislature deems it advisable as a matter of social policy to broaden the statutory exception along the lines of the *Mandolidis* holding, so be it. Given the comparative recency of the legislature's considered, deliberate use of the word "intentional" in SDCL 62–3–2, however, the judiciary should not be quick to expand upon the accepted, traditional meaning of that word.