1999 SD 66

**Marlys CLAUSEN, as Special Administratrix of the Estate of David Clausen, her Deceased Husband, Plaintiff and Appellant,**

**v.**

**ABERDEEN GRAIN INSPECTION, INC., and South Dakota Wheatgrowers Assoc., a South Dakota Corporation, Defendants and Appellees.**

Nos. 20370, 20371, 20386.

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1998.

Reassigned March 16, 1999.

Decided May 26, 1999.

Jack H. Hieb of Schoenbeck Law Office, Webster, South Dakota and Kenneth E.

Barker of Quinn, Eiesland, Day & Barker, Belle Fourche, South Dakota, Attorneys for plaintiff and appellant.

Arlo D. Sommervold of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, South Dakota, Attorneys for defendant and appellee Aberdeen Grain.

John H. Billion and Lon J. Kouri of May, Johnson, Doyle & Becker, P.C., Sioux Falls, South Dakota, Attorneys for defendant and appellee South Dakota Wheatgrowers Association.

GILBERTSON, Justice (on reassignment).

[¶ 1.] David Clausen (Clausen) died as a result of injuries he sustained after falling from the top of a railcar from which he was sampling grain. His wife, Marlys Clausen (Mrs. Clausen), brought a negligence action against Aberdeen Grain Inspection, Inc. (AGI), the grain inspection company that contracted with Clausen and South Dakota Wheatgrowers Association (Wheatgrowers), the owner of the grain elevator where the railcars were located. The trial court granted summary judgment to AGI and Wheatgrowers and denied their motion for taxation of costs. Mrs. Clausen appeals the trial court's grant of summary judgment to AGI and Wheatgrowers. AGI and Wheatgrowers appeal the trial court's denial of their joint motion for taxation of costs. We affirm summary judgment as to Wheatgrowers' liability, reverse as to AGI and remand to the trial court to determine what, if any, costs and disbursements Wheatgrowers should be allowed to recover.

**FACTS**

[¶ 2.] AGI is a South Dakota corporation providing grain inspection services for businesses engaged in the sale and distribution of grain. On January 29, 1992, AGI hired Clausen as an independent contractor.[1] Clausen's job consisted of probing

---

1. The contract of employment between AGI and Clausen stated that Clausen was an inde-

railcars to obtain grain samples that would later be inspected at the AGI laboratory.

[¶ 3.] In order for Clausen to sample grain, he had to climb to the top of a railcar with a ten foot probe, gutter and sample bags, and position himself to insert the probe into each of the railcar compartments at a ten degree angle. He would empty the probe contents into the gutter and visually inspect the grain before emptying it into a sample bag and moving on to probe another area of the car. AGI supplied Clausen the necessary equipment to probe the railcars. Clausen did receive training for this job with the knowledge and consent of AGI from another independent contractor who also worked for AGI. However, AGI did not directly provide Clausen with any other safety equipment or safety training.

[¶ 4.] Clausen was probing for grain samples on the morning of December 6, 1994 at the Bristol élevator owned by Wheatgrowers. No representative of Wheatgrowers was present to supervise Clausen's activities. It did not provide fall-prevention devices to Clausen or other individuals who worked on top of the railcars. While Clausen was sampling grain from atop the first railcar of the day, he apparently fell headfirst off the car and landed on the concrete approximately fifteen feet below. No one witnessed the accident. Clausen died as a result of the injuries he sustained from the fall.

[¶ 5.] Mrs. Clausen initiated a wrongful death action against AGI and Wheatgrowers on behalf of herself and as special administratrix of Clausen's estate. She claimed AGI was negligent by not providing Clausen with proper safety equipment or training to prevent his fall from the railcar. Mrs. Clausen alleged Wheatgrowers, as the landowner, was negligent in not exercising reasonable care for Clausen's safety because of its failure to provide safety training or fall-protection equip-

ment for persons working on top of the railcars.

[¶ 6.] AGI and Wheatgrowers filed motions for summary judgment, claiming they owed no duty to Clausen. The trial court ruled AGI owed Clausen no duty of care because Clausen's employment as an independent contractor was not inherently dangerous and AGI did not exert any negligent control over Clausen's activities. The trial court also ruled that Wheatgrowers owed no duty of care to Clausen under the law of premise liability because Clausen should have been aware of the risk inherent in working on top of railcars. Finding neither defendant owed a duty of care to Clausen, the trial court granted summary judgment in favor of Wheatgrowers and AGI. AGI and Wheatgrowers also filed motions for taxation of costs. The trial court denied these motions for failure to cite statutory authority and failure to itemize costs.

[¶ 7.] Mrs. Clausen raises the following issues on appeal:

1. Whether the trial court erred in holding AGI owed no duty to provide safety training or fall prevention equipment to Clausen.

2. Whether the trial court erred in holding Wheatgrowers owed no duty to Clausen as a business invitee to provide him with safety training or fall prevention equipment.

[¶ 8.] AGI and Wheatgrowers raise the following issue by notice of review:

3. Whether the trial court should have granted AGI's and Wheatgrowers' motions for taxation of costs.

## STANDARD OF REVIEW

■ [¶ 9.] The standard under which we review summary judgment is well established:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

pendent contractor. The status of that relationship has not been disputed by Mrs. Clau-

sen and thus is controlling on us for purposes of this appeal.

gether with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin,* 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). *Chord v. Reynolds,* 1999 SD 1, ¶ 10, 587 N.W.2d 729, 731. Whether a duty exists is a question of law which we review de novo. *Tipton v. Town of Tabor,* 538 N.W.2d 783, 785 (S.D.1995). "If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Mack v. Kranz Farms, Inc.,* 1996 SD 63, ¶ 8, 548 N.W.2d 812, 814.

## ANALYSIS AND DECISION

[¶ 10.] **1. Whether the trial court erred in holding AGI owed no duty to provide safety training or fall prevention equipment to Clausen.**

[¶ 11.] Before liability may be imposed on the theory of negligence there must be a duty on the part of the defendant to protect a plaintiff from injury. *Blumhardt v. Hartung,* 283 N.W.2d 229, 231–32 (S.D.1979). Ordinarily, the employer of an independent contractor may not be held liable for injuries that have been personally sustained in the performance of the contract by the contractor.

*See* 41 Am.Jur.2d *Independent Contractors,* § 29 (1995). Furthermore, one who hires an independent contractor generally does not have a duty to insure the contractor performs his work in a safe manner. *Diaz v. Elliott–Williams Co., Inc.,* 974 S.W.2d 915, 918 (Tex.App.–El Paso 1998). If the hiring party retains control over the contractor's work and fails to exercise control in a reasonable fashion, it may be liable for damages that result. *Id.*

[¶ 12.] The trial court held AGI owed Clausen no duty, citing *Haufle v. Svoboda,* 416 N.W.2d 879 (S.D.1987). *Haufle* sets forth the general rule that an employer is not liable for physical harm to another resulting from acts or omissions of an independent contractor or an independent contractor's servants. *Id.* at 880. In the present case the issue before the Court is the contractor's liability for injuries to the subcontractor himself rather than liability for injuries to another due to the negligent act of the subcontractor. Thus *Haufle* is not controlling, but it does provide a starting point from which we base our decision.

[¶ 13.] The Court in *Haufle* recognized the general rule was subject to a number of well-recognized exceptions that had substantially diluted the rule.[2] The exception to nonliability, which is relevant to this appeal, is where the employer was directly negligent in "exercising retained control over the work...." *Haufle,* 416 N.W.2d at 880. We find this exception to be dispositive and as a question of fact exists as to it, we reverse and remand for trial concerning AGI.

[¶ 14.] AGI points to the contract language as evidence it had no control over Clausen's work.[3] As we find evidence exists in the record of AGI's control over Clausen, there is a genuine issue of mate-

---

2. As was observed in *Haufle:* "[T]he so-called exceptions, like a rodent consuming anaconda or python, have swallowed the so-called general rule of nonliability." 416 N.W.2d at 880. (Citing 1 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 4:23 at 676 (1983) (footnote omitted)).

3. The relevant contract provision reads in part:

[T]he manner, means and details of conducting such work will be under the sole control of the contractor.

rial fact that supports Clausen's claim for damages pursuant to this exception.

■ [¶ 15.] The general rule that an employer has no liability for the acts of an independent contractor stems from the concept that "the employer has no power of control over the manner in which the work is to be done by the contractor, it is ... regarded as the contractor's own enterprise and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risks, and bearing them...." Restatement (Second) of Torts § 409 cmt. b (1965). We have said an independent contractor carries "on an independent business and contract work according to their own methods, subject to employer's control only as to results." *Baer v. Armour & Company*, 63 S.D. 299, 302–303, 258 N.W. 135, 137 (1934).

■ [¶ 16.] Our review of the record reveals evidence that would create a genuine issue of material fact as to whether AGI retained control over Clausen's work. For example, Joseph Bartos, an independent contractor, trained Clausen for AGI.

Clausen was hired to replace Bartos upon his retirement. AGI knew of this training, approved it and discussed it with Bartos. Clausen was given a "Grain Inspection Handbook" by AGI. He was given two training exams by AGI in the three years he worked for the company. He was given annual "Conflicts of Interest and Standards of Conduct" reminders.

■ [¶ 17.] In its defense, AGI points to *Ashby v. Northwestern Public Service Co.*, which stands for the proposition that the right of the employer to inspect the independent contractor's work does not make the employer liable for negligence of the independent contractor. 490 N.W.2d 286, 290 (S.D.1992). As far as it goes, that statement of the law continues to be correct.[4] AGI claims the only control it had was approval of the work. However, what AGI did went beyond inspection or approval of Clausen's work. Bartos instructed Clausen with the knowledge and consent of AGI. An AGI employee advised Clausen as to whether or not he could work in inclement weather.[5] Supervisors of AGI monitored Clausen on several occasions.[6]

4. Both *Ashby* and the case now before us are to be analyzed from the same standard of review, that is whether there is a question of fact as to if the defendant "was negligent in exercising retained control over the work." *Haufle*, 416 N.W.2d at 880. However, as to any factual comparison, "[a]ny future case's reliance on this case, [*Ashby*] is limited by the recognition that the future cases will contain different facts...." *Westover v. East River Elec. Power*, 488 N.W.2d 892, 901 (S.D.1992). An examination of the record in *Ashby* established that defendant Northwestern retained no control over Ashby and in fact had no contractual relationship at all with Ashby, only with his employer. Ashby's employer directed Ashby's actions. The record in the case now before us establishes Clausen's actions were directed at least in part by AGI. Thus, the legal analysis *Ashby* is directly supportive of an outcome in this case giving Clausen his day in court.

5. In Clausen's personnel file there is a note that reads:
4/7/93—Observed Dave Clausen probing at ... Wheatgrowers.... There was a light rain coming down so Dave took the sample,

probe and trough into elevator after sampling. I told him he could continue probing if this trough was dry and no grain or FM stuck to it and the samples and probing equipment [remained] dry.

6. Again notations in Clausen's personnel file indicate he was supervised a number of times.

1/29/92—I went with Dave to Waubay.... I just observed Dave he knew right away that the car had 4 compartments. He probed in the center at a 10 [degree] angle on each compartment. I then observed him pour the grain into the bag.... I gave him his test he got 100% on both I then gave him chapter on probing and went over the following....
4/10/92—Observed Dave probe five cars [at Wheatgrowers].... He had no idea I was there. His probe angle was 10 [degrees] approx. he probed in the center of each compartment. He was careful not to spill any grain as he put it in the bag. He took one probe out of each compartment.... Dave seems to be doing a good job for us.
8/92—Two week supervision of samplers was made by Ken Weaver and Roy Bruner. The

Supervisors took notes on Clausen's work and even corrected Clausen's technique when he was not probing correctly.[7] AGI even provided him with the equipment to do his job.

[¶ 18.] The dissent claims that AGI may have occasionally inspected Clausen's work, but it did not maintain any control over his work area – the railcar. However, the exception to the general rule does not require that the contractor maintain control over the "work area." In *Ashby*, we considered whether Northwestern had a duty to exercise reasonable care since it retained "some measure of control over the project." 490 N.W.2d at 289. We found that the only control Northwestern had over the "project" was the right to designate, inspect and order faulty work re-executed. *Id.* These rights did not rise to the level to place Northwestern under the exception. *Id.* However, in *Ashby* we in no way limited *Haufle's* analysis to the "work area." In *Haufle*, we considered Haufle's allegation that the contractor was negligent in exercising "control over the work." 416 N.W.2d at 880. There has never been a requirement that this exception be limited to a "work area."[8] Mrs. Clausen has presented enough evidence of control[9] by AGI over Clausen's "work" to allow her to go beyond the summary judgment threshold.

[¶ 19.] Based on the evidence contained in the record, it is clear that there is a genuine issue of material fact as to whether AGI retained any control over Clausen as to remove it from the general rule of employer nonliability. We hold the grant of summary judgment as to this exception is in error and as such, we reverse and remand this issue for trial.

[¶ 20.] **2. Whether the trial court erred in holding Wheatgrowers owed no duty to Clausen as a business invitee to provide him with safety training or fall prevention equipment.**

[¶ 21.] Clausen correctly sets forth the duty of a landowner to his invitee. *See Jones v. Kartar Plaza*, 488 N.W.2d 428 (S.D.1992); *Ballard v. Happy Jack's Supper Club*, 425 N.W.2d 385 (S.D.1988); *Mitchell v. Ankney*, 396 N.W.2d 312 (S.D. 1986); *Stenholtz v. Modica*, 264 N.W.2d 514 (S.D.1978). Clausen claims Wheatgrowers' duty arises from fact Wheatgrowers owned the "facility" or elevator used to load grain into railcars to be sampled by Clausen. We affirm but do not reach the duty rationale adopted by the trial court. *Mack*, 1996 SD 63 at ¶ 8, 548 N.W.2d at 814.

[¶ 22.] Clausen did not fall off the elevator but instead off an icy-topped railcar sitting on a railroad track. Thus, Clausen was not injured by a dangerous condition of the land or any structure affixed to it, he was injured by ice on a movable railcar, which is not a fixture of Wheatgrowers' land or elevator. There is nothing in the record to indicate who owned or had control over the railcar. Thus, the authority cited by Mrs. Clausen does not support her claim.

*Makaneole v. Gampon*, 7 Haw.App. 448, 776 P.2d 402, 409 (1989) (The employer who retains control over the independent contractor's manner of performance cannot avoid responsibility for injuries).

---

problem areas they found were made into a training exam.

4/7/93—Observed Dave Clausen probing at South Dakota Wheatgrowers . . . .

8/11/94—Observed Dave Clausen probing . . . . Several minor problems were noted. * * * * I talked to him about the 3 problems and he said he would change his procedure to be in compliance with the regulations.

7. *Supra* note 6.

8. We find persuasive authority in several jurisdictions that agrees with our analysis. *E.g.*

9. In *Ashby*, Northwestern supplied nothing to Ashby, let alone Ashby's employer. Here, AGI supplied Clausen all the necessary tools for his job and has been shown, exercised control over how Clausen used AGI's equipment to perform his duties.

**[¶ 23.] 3. Whether the trial court should have granted AGI's and Wheatgrowers' motions for taxation of costs.**

[¶ 24.] As we reverse on the merits as to AGI, its claim for costs is also reversed. However, there remains the claim for costs by Wheatgrowers.

[¶ 25.] SDCL 15–6–54(d) provides an application of costs and disbursements can be made within thirty days of the entry of judgment or the party waives its right to such costs. Summary judgment for Wheatgrowers was filed on December 3, 1997. Wheatgrowers' motion for taxation of costs was filed December 4, 1997, and was accompanied by the proper certificate of service dated December 5, 1997. On December 8, 1997, the trial court dismissed Wheatgrowers' motion for taxation of costs because it had failed to cite statutory authority in support of the motion and failed to list the costs or how they were incurred. The trial court also denied Wheatgrowers' request to submit affidavits of cost. Wheatgrowers subsequently asked the court to vacate its earlier motion denying costs. The trial court denied the motion.

[¶ 26.] SDCL 15–17–37 provides:

The prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial. Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts and other similar expenses and charges. These expenditures are termed "disbursements" and are taxed pursuant to § 15–6–54(d).

Because Wheatgrowers' motion for taxation of costs was timely, this issue is remanded to the trial court to determine if it is entitled to such costs and disbursements as provided by SDCL 15–17–37.

[¶ 27.] In conclusion, we affirm the grant of summary judgment to Wheatgrowers. We reverse the trial court's denial of Wheatgrowers' motion for taxation of costs and remand to the trial court for a determination as to what costs and disbursements Wheatgrowers may be entitled to collect from Clausen. We reverse and remand for trial the issue of AGI's liability and any eventual claim for costs.

[¶ 28.] MILLER, Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 29.] ANDERSON, LEE D., Circuit Judge, concurs in result in part and dissents in part.

[¶ 30.] ANDERSON, LEE D., Circuit Judge, sitting for SABERS, Justice, disqualified.

ANDERSON, LEE D., Circuit Judge (concurring in result in part and dissenting in part).

[¶ 31.] I respectfully dissent as to Issue 1. I concur in the result reached by the majority on Issue 2, and I concur on Issue 3 with the majority's holding that the prevailing parties should be allowed to recover costs and disbursements.

**[¶ 32.] 1. Duty of care AGI owed to Clausen.**

[¶ 33.] Upon the filing of a summary judgment motion, the non-moving party must present specific facts showing that a genuine, material issue of fact exists. *Benson v. Goble*, 1999 SD 38, ¶ 9, 593 N.W.2d 402. Because Mrs. Clausen failed to identify any genuine issues of material fact at the trial court level or in her appellate briefs, and finding no genuine issue of material fact in the record, I would affirm the summary judgment granted to AGI.

[¶ 34.] The majority rests its decision on the second exception to the rule of nonliability found in *Haufle v. Svoboda*, 416

N.W.2d 879 (S.D.1987). That exception states that the employer can be liable for an independent contractor's negligence if the employer was *negligent in maintaining control over the work.* (emphasis supplied). While I agree that this exception to the rule of nonliability from *Haufle* should also guide us in determining the liability of an employer for injuries sustained by the independent contractor himself, I disagree that there is a genuine issue of fact as to whether AGI maintained control over Clausen's work.

[¶ 35.] The written contract entered into between Clausen and AGI provided that the manner, means, and details of conducting the work would be under the sole control of Clausen. The decision whether work place conditions were safe enough in which to perform the necessary work was left to the independent contractor. Clausen had been working atop railcars for almost three years at the time of his fall. No one from AGI was present to assess the conditions on the date of the accident nor had AGI exercised any control over this railcar. Mrs. Clausen presented no facts to create a genuine issue of fact concerning control over the work or work area by AGI.

[¶ 36.] The majority opinion finds the following evidence in the record raises a genuine issue of material fact precluding a grant of summary judgment to AGI: (1) training given to Clausen by Mr. Bartos, another independent contractor who had previously contracted to perform the same work for AGI, (2) an AGI personnel note telling Clausen he could continue probing on a rainy day so long as the grain samples and equipment remained dry, and (3) several notes in a file kept by AGI on Clausen written by AGI personnel while they observed Clausen taking grain samples.

[¶ 37.] The evidence relied on by the majority does not provide a genuine issue of material fact as to whether AGI was negligent in maintaining control over Clausen's work or the work area in question, which is the railcar. There is no evidence that AGI ever had control over the railcar. AGI's monitoring of Clausen's work activities and telling him that he could work in the rain if the samples and probe remained dry only establish that the company was exercising its right to inspect Clausen's work to insure that an adequate, uncontaminated grain sample was being obtained. AGI's right to inspect Clausen's work in order to insure its satisfactory completion does not render it liable for Clausen's injuries. *Ashby v. Northwestern Public Service Co.,* 490 N.W.2d 286, 290 (S.D.1992). Although AGI may have occasionally inspected Clausen's work to insure compliance with their requirements, the record is void of any evidence that AGI retained control over Clausen's work at any time prior to, and particularly on or around the date of Clausen's fall. Because AGI did not retain any control over Clausen's work or the work area, this exception to the rule of non-liability does not apply. The trial court's grant of summary judgment to AGI should not be reversed on this basis.

[¶ 38.] Although not addressed by the majority opinion, there is another well-recognized exception to the rule of nonliability noted in *Haufle,* to wit: An employer of an independent contractor can be held liable when the independent contractor injures a third party while engaged in an inherently dangerous activity.[10] Even if

---

10. Though not necessary to resolve the issue before us in this case, the following principles should be adopted in South Dakota concerning inherently dangerous activities. Whether an activity is inherently dangerous is a question of law. *McCubbin v. Walker,* 256 Kan. 276, 886 P.2d 790, 800 (1994). An activity will not be considered an inherently dangerous activity if (1) it is susceptible of being performed without danger; (2) injury is merely possible when the activity is performed with reasonable care; and (3) the danger involved is due only to unforeseen risks and dependent on the manner in which the individual performs his job duties. *Bosak v. Hutchinson,* 422 Mich. 712, 375 N.W.2d 333, 340–41 (1985).

working on top of a railcar could be considered an inherently dangerous activity, the class of persons entitled to protection under the inherently dangerous activity exception does not include independent contractors themselves. At least one court has held that independent contractors are not protected by the rule. *See, Lawrence v. Bainbridge Apartments,* 957 S.W.2d 400 (Mo.App. W.D.1997). This Missouri court, quoting W. Keeton, Prosser and Keeton on *The Law of Torts* 6 (5th ed. 1984), stated in its decision:

> Tort law is 'concerned with the allocation of losses arising out of human activities....' To achieve this objective, courts and legislatures have established rules of liability. These rules ought to function to promote care and punish neglect by placing the burden of their breach on the person who can best avoid the harm.

*Id.* at 404. The best person in a position to avoid the unfortunate fall of Clausen from atop of the railcar was Clausen himself.

[¶ 39.] This Court has previously stated that allowing an independent contractor's employee to recover from an employer for injuries sustained while engaging in what could be considered an inherently dangerous activity would be inconsistent with the well-established rule of worker's compensation—that being the independent contractor has the burden of providing compensation if injuries result to its employees. *See, Ashby,* 490 N.W.2d at 290. This does not mean that an employer escapes liability for injuries to an employee; rather the employer pays for any injuries to the independent contractor's employees through the contract price negotiated between the employer and independent contractor. *Id.,* (citing *Wagner v. Continental Cas. Co.,* 143 Wis.2d 379, 421 N.W.2d 835, 844 (1988)).

[¶ 40.] The rationale found in *Ashby* should be applicable in this case as well. AGI entered into a contract with Clausen to have a certain job performed. As an independent contractor, it was Clausen's role to assume financial responsibility for any injuries he received during the course of his job performance, whether it be by procuring disability insurance, life insurance, or some other form of protection. Nothing in this case supports a policy which would place a burden on AGI, the employer of an independent contractor, to guard against harm which may occur to the independent contractor himself while engaged in that independent contractor's own work.

[¶ 41.] The trial court's grant of summary judgment to AGI should be affirmed.

### [¶ 42.] 2. Duty of care Wheatgrowers owed to Clausen.

[¶ 43.] I concur with the result reached by the majority opinion on summary judgment being properly granted to Wheatgrowers.

### [¶ 44.] 3. Whether the trial court should have granted AGI's and Wheatgrowers' motions for taxation of costs.

[¶ 45.] I concur with the majority's opinion as to Wheatgrowers, but as I would affirm summary judgment being granted to AGI, I believe AGI should be allowed to recover costs and disbursements as well.